Eugene T. HARRIS, Plaintiff–Appellant,

v.

The UNITED STATES of America and The United States Department of the Army, Defendants–Appellees.

No. 87–1107.

United States Court of Appeals, Federal Circuit.

March 10, 1988.

Linda Lipsett, Connerton & Bernstein, Washington, D.C., argued for plaintiff-appellant. With her on the brief was Ira M. Lechner.

Jane W. Vanneman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendants-appellees. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan, Asst. Director and Paul J. Ehlenbach. Also on the brief were Major William Trivett, Dept. of the Army, Washington, D.C. and Stuart Miller, Office of Staff Judge Advocate, Fort Gordon, Ga., of counsel.

Kevin M. Grile, American Federation of Government Employees, AFL–CIO, Northfield, Ill., was on the brief for amicus curiae.

Before RICH, Circuit Judge, and NICHOLS and BALDWIN, Senior Circuit Judges.

NICHOLS, Senior Circuit Judge.

This is an appeal by Eugene T. Harris (Harris or appellant) from a decision by the United States District Court for the Southern District of Georgia, CV185–163, holding that the trial court had no Tucker Act jurisdiction to determine Harris' environmental differential pay (EDP). The Civil Service Reform Act, as adopted in part in the collective bargaining agreement to which Harris was bound, provided the exclusive applicable grievance procedures necessary to determine Harris' EDP, if any, and that of all other members of his bargaining unit. We agree with the district court's dismissal of the suit pursuant to Fed.R.Civ.P. 12(b)(1) and affirm.

## I

### Background

Mr. Harris was a wage board employee working at the Central Heating and Cooling Plant at Fort Gordon, Georgia, an Army facility. Harris was subject to a collective bargaining agreement with an AFGE local, making the local the exclusive bargaining agent for all eligible employees in the bargaining unit. As defined in the agreement, the bargaining unit excluded nonappropriated fund employees, supervisors, and some others. The agreement included specific, clearly delineated grievance procedures for all but certain stated subjects. The grievance and arbitration procedure outlined in the bargaining agreement closely paralleled the wording of 5 U.S.C. § 7121. The agreement excluded from the grievance procedures: the subjects excluded by section 7121(c)(1)–(5) of the Civil Service Reform Act; nonselection for promotion, reassignment, or details; awards; and separation or termination of a probationary employee. All else was included within the scope and intent of the collective bargaining agreement including, as the district court found, pay/wage determinations.

Harris filed his initial grievance requesting EDP on June 4, 1984, alleging hazardous conditions in the workplace, specifically exposure to excessive concentration of airborne asbestos while working at Fort Gordon. The grievance was processed and denied at the first and second steps. On October 26, 1984, Colonel C.D. Preetorius, Acting Chief of Staff, denied the grievance at the third step. Throughout these proceedings, Harris complied with the terms of the collective bargaining agreement. However, after his third denial, Harris brought suit, on behalf of himself and oth-

ers similarly situated, in the district court rather than go to arbitration, as the collective bargaining agreement required. The trial judge dismissed the suit under Fed.R. Civ.P. 12(b)(1), holding that the grievance procedures adopted in the collective bargaining agreement represented the exclusive remedy for appellant Harris and placed jurisdictional strictures on the district court's ability to hear the suit. The district court would have had jurisdiction, if at all, only under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2). This court has taken jurisdiction of an appeal from a district court determination dealing with claims for premium pay for exposure to asbestos-laden air, *O'Neall v. United States*, 797 F.2d 1576 (Fed.Cir.1986). That case did not involve the question this one does, of preemption of jurisdiction by a collective bargaining agreement for arbitration.

## II

### *Discussion*

Appellant cited this court's decision in *Fausto v. United States*, 783 F.2d 1020, *aff'd on rehearing*, 791 F.2d 1554 (Fed.Cir. 1986), so often in its briefs, that the case may be considered the linchpin of its argument. As the Supreme Court granted certiorari in *Fausto* about the time we heard oral argument, we decided to await the result of that review. The result was a reversal, *United States v. Fausto*, — U.S. —, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). While we almost could stop there, differences in the cases require some discussion, and the Supreme Court's *Fausto* has its main importance here in the technique of statutory construction it teaches.

*Fausto* deals with a money claim by an "excepted" employee of the United States Government, *i.e.*, one who had no appeal right to the Merit Systems Protection Board (MSPB) under the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111, codified in various sections of Title 5, United States Code. Asserting an adverse action against him had been unlawful, Fausto sued in the Claims Court under the Back Pay Act, 5 U.S.C. § 5596, and the Tucker Act, 28 U.S.C.

§ 1491. That court held the CSRA took away whatever jurisdiction it had previously had. Our court, reversing, was of the view that repeals by implication are not favored, especially when they would deprive an employee of a right previously well established. The position of the Supreme Court is that Congress was well aware of the existence of the "excepted" class of employees, and that the careful construction of a new mode of administrative and judicial review of disciplinary cases against other employees evidences an intention to abolish whatever other remedies might have been available to "excepted" employees, who are now made, in truth, mere "at will" employees, a category from which the prior law had to some extent removed them. The Court viewed the rule against repeals by implication as entitled to respect but not necessarily decisive where the prior rule was only a judge-made extension of statutory remedies not themselves expressly written to apply to the case of the "excepted" employee.

In the case before us, the issue is not whether anyone's judicial review is foreclosed, but only whether a claimant must pursue one route or another. The Supreme Court in *Fausto* mentions, but rebuts, the presumption that judicial review is available, citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). That does not trouble us here when one kind of judicial review is provided instead of another.

The claims here involved do not attack any adverse action and thus have an entirely different source from the *Fausto* claims. As an hourly wage employee, claimant's pay is based on 5 U.S.C. § 5343. This prescribes for him a prevailing wage system to be fixed separately for separate "local wage areas." By section 5343(c):

> The Office of Personnel Management, by regulation, shall prescribe * * *
>
> (4) for proper differentials, as determined by the Office, for duty involving unusually severe working conditions or unusually severe hazards;

Such a regulation is Appendix J to Federal Personnel Manual 532–1. It provides an

EPD of 8 percent for exposure to "air borne concentrations of asbestos." The appellant claims he was exposed to such airborne asbestos at the government plant where he worked at Fort Gordon, Georgia.

■ Title 5 U.S.C. § 5343(c) further provides in subsection (2) for full participation by representatives of employees in every phase of providing an equitable system for prevailing rate employees. It seems clear, and is not disputed, that differentials for hazardous or otherwise severe working conditions are among the conditions thus declared suitable for collective bargaining.

In *Bendure v. United States*, 554 F.2d 427, 213 Ct.Cl. 633 (1977), the court took jurisdiction of an "environmental differential pay claim" under the ancestor of the present section 5343(c), without requiring exhaustion of administrative remedies available under a collective bargaining agreement, which the court regarded as applicable but inadequate and futile because, among other things, there was no provision for appeal to the then Civil Service Commission. This case we do not consider authority under the very much changed provisions of the CSRA presently to be considered.

The district court properly took note of provisions of the CSRA, new in 1978, providing a system for resolving "grievances" which arise under collective bargaining agreements between federal employers and unions of their employees. All such provisions "shall be the exclusive procedures for resolving grievances." 5 U.S.C. § 7121(a)(1). But such an agreement may exclude any matter from the procedures. 5 U.S.C. § 7121(a)(2). Here there was such an agreement, covering prevailing wage employees at the Fort Gordon plant. It said it was to be "the exclusive procedure available to" the covered employees, and did not exclude environmental differential claims. Both by the statute and by the agreement, a grievance is "any complaint by an employee concerning any matter relating to the employment of the employee." 5 U.S.C. § 7103(a)(9)(A). Appellant makes an argument based on selected legislative history, but the business of using legisla-

tive history to modify plain, unambiguous statutory language, is much altered of late. *See, e.g.,* discussion in *LSI Computer Systems, Inc. v. ITC,* 832 F.2d 588, 590, 4 USPQ2d 1705, 1707 (Fed.Cir.1987).

■ It seems apparent that a claim respecting hazardous air at a particular plant is grievable and is a local, fact-specific issue. It is only in part a money claim: for the future the law would prefer removal of the hazard to continued payment of the differential. An entitlement created by nationwide federal law, as for example to statutory overtime under the Fair Labor Standards Act, 29 U.S.C. § 216(b), would be a different matter as to which we need express and do express no opinion here. *Cf. Barrentine v. Arkansas Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). As the present matter is grievable, employees through their representatives can agree with the employer on a procedure for dealing with it, and here they did. We join the district court, therefore, in holding the agreed procedure, arbitration, preclusive of other procedures and consequently, that resort to the Tucker Act is precluded. Jurisdiction under it is withdrawn, even though it is never mentioned.

■ The Supreme Court's *Fausto* opinion teaches that in effectuating the intent of Congress to replace one remedy with another, the doctrine that repeals by implication are not favored cannot be allowed to overcome other and plainer indications of intent. The Supreme Court has long adhered to the classic doctrines that the United States, as sovereign, cannot be sued without its own express consent, granted by Congress, that such consent "cannot be implied but must be unequivocally expressed" and that it requires not only consent to the tribunal that is to exercise jurisdiction, but also to the substantive liability to pay money to be enforced. *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976), and cases there cited. We think "unequivocally" means expressed, and something more than just expressed, perhaps expressed "unambiguously," though the other term is timeworn in this context.

There is necessarily some tension between those doctrines and the doctrine that repeals by implication are not favored, because any time a new remedy, alternative to the broad, century-old Tucker Act is created, a question must arise as to whether consent to be sued under the Tucker Act is any longer "unequivocally expressed"— unless it is a class of claim the Tucker Act specifically enumerated. Justice Scalia, in *Fausto*, rightly refers to *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), as a previous instance where new provisions superseded, and in part suppressed, a previously existing Tucker Act liability *sub silentio*. There, however, the problem was rather glossed over instead of being faced up to as it is in the Scalia opinion. If it is not quite true that repeals by implication are actually favored, not disfavored, when it is a question of impliedly repealing a preexisting Tucker Act remedy against the government by something more specific, and different, yet at least in that context, repeal by implication is highly respectable and not a novelty. For a more extended discussion of cases, and without committing the panel to any opinion stated therein, reference is made to Nichols, J., concurring and dissenting in *Mitchell v. United States*, 664 F.2d 265, 276 and ff 229 Ct.Cl. 1 (1981), *aff'd*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

In view of the foregoing, we hold that the provisions of the Civil Service Reform Act cited above do effect a repeal by implication of the provisions of the Tucker Act, so far as by the authority of *Bendure*, 554 F.2d 427, they might before 1978, have consented to a suit for EDP to a prevailing wage employee without regard to available remedies by collective bargaining grievance procedures and arbitration.

The district court discussed the alleged dilemma which might confront persons such as Harris who were prevailing wage employees working in the alleged hazardous conditions, but who might not be able to get the union to prosecute the arbitration for them. It took the view that such persons could require the union to request arbitration on their behalf. Appellant disputes this, but if in any event some persons are worse off or without any remedy at all, this was also true of Mr. Fausto and is not, we believe, a dispositive consideration of itself in determining whether or not a repeal by implication occurred. The government says that employees not members of the bargaining unit are not prevailing wage employees either, and the entitlement to hazardous duty pay applies only to prevailing wage employees. It would appear a claimant class of nonmembers of the bargaining unit only might present a different question, one not before us as Harris himself, the appellant, is a member. Our mandate will not foreclose the district court from entertaining a class action for EDP on behalf of a class of employees at Fort Gordon not members of the bargaining unit or even from allowing amendment of the present suit to make it such a claim.

### Conclusion

Because various provisions of the Civil Service Reform Act of 1978 effect a repeal by implication of the Tucker Act, so far as it would have consented to suit for EDP by prevailing wage employees covered by negotiated collective bargaining, grievance, and arbitration procedures, the district court ruled correctly that it had no jurisdiction of the instant suit.

AFFIRMED.