**Barney E. SULLIVAN, et al., Plaintiffs**

v.

**William H. BALL, Secretary of the Navy, Defendant.**

**No. 88–197–Civ–J–12.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 12, 1989.

Al Millar, Jacksonville, Fla., for plaintiffs.

Ralph I. Lee, Dorothea A. Beane, Asst. U.S. Attys., Jacksonville, Fla., for defendant.

## ORDER OF DISMISSAL

MELTON, District Judge.

This cause is before the Court on defendant's Motion to Dismiss Plaintiffs' Amended Complaint—Class Action, filed herein on August 30, 1988. Plaintiffs responded with a memorandum in opposition to the motion, filed herein on September 22, 1988. Defendant argues that this Court lacks subject matter jurisdiction to hear this case. For the reasons stated herein, the Court will grant the motion and dismiss this case with prejudice.

A brief description of the nature of the underlying controversy facilitates an understanding of the issue of jurisdiction.[1] Plaintiffs were and are civilian employees—Aircraft Mechanics, Aircraft Metalsmiths, and Aircraft Electricians—permanently assigned to the Naval Aviation Depot (formerly the Naval Air Rework Facility), Naval Air Station Jacksonville ("NAS Jacksonville"). As a regular part of their duties, plaintiffs travel to various other Naval Stations throughout the world, including Naval Air Station Cecil Field ("NAS Cecil Field"), which is located approximately seventeen miles from NAS Jacksonville. Both worksites are within the commuting area for the consolidated city of Jacksonville, which has the largest geographical area of any city in the nation.

---

1. This description is based upon, and accepts as true for present purposes, the factual allegations of the Amended Complaint and the exhibits incorporated therein by reference.

Prior to January 1987 plaintiffs were paid mileage and travel allowance when they were on official business and on temporary assignment away from their permanent duty station, including assignment to NAS Cecil Field. This payment was made for the excess distance traveled relative to the distance otherwise traveled between a plaintiff's home and permanent duty station. Plaintiffs submit that they gave substantial consideration to the ease and accessibility of the situs of their permanent duty station in selecting their permanent residence.

In January 1987, the union representing plaintiffs, International Brotherhood of Teamsters Local 512 ("Local 512"), agreed with defendant's agent, the management at NAS Jacksonville, to a Memorandum of Understanding changing the payment policy concerning travel to NAS Cecil Field. Under the January 1987 policy, assignment to NAS Cecil Field for six weeks or longer results in a change of the permanent duty station of an employee from NAS Jacksonville to NAS Cecil Field. This change of permanent duty station renders an employee ineligible for temporary duty payments such as mileage. Defendant, however, does not pay any relocation allowance authorized by statute or regulation. Plaintiffs registered complaints with defendant's agent over the January 1987 policy.

Defendant sought a legal opinion from the Deputy Counsel for the Comptroller of the Navy ("Deputy Counsel") on the propriety of the January 1987 policy. This opinion request was prompted by several grievances filed by Local 512 challenging the policy. In a document dated November 19, 1987, the Deputy Counsel approved the practice of designating multiple posts of duty within the Jacksonville corporate limits and curtailing mileage payments accordingly.

Although the January 1987 policy began as a six month long experiment, defendant has continued the policy to present. Plaintiffs filed their action in March 1988. Plaintiffs seek certification of the action as a class action suit. In response to the first motion to dismiss filed by defendant, plaintiffs sought and obtained leave to file an amended complaint. Jurisdiction under the three counts of the Amended Complaint is asserted on essentially two grounds. Count I seeks a declaratory judgment on the meaning of the statute governing travel pay, 5 U.S.C. § 5704. Counts II and III rely on the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2). Count II asserts a theory of damages from the refusal to pay travel allowance to plaintiffs. Count III asserts a theory based in an employer's liability for its role in a breach of the duty of fair representation by a union, a doctrine established by *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), for employers in the private sector covered by the National Labor Relations Act. The Court is of the opinion that none of the jurisdictional bases asserted by plaintiffs form a basis for continuation of this suit in this forum.

Because the Declaratory Judgment Act does not confer jurisdiction, *Scales v. Memorial Medical Center*, 690 F.Supp. 1002, 1003 (M.D.Fla.1988), Count I, an action for declaratory judgment on the meaning of § 5704, must rely on the statute to be interpreted for its jurisdictional basis. However, judicial construction of § 5704 in the present context is preempted by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 7101 *et seq.* As a consequence, the Court lacks jurisdiction to entertain the merits of the claim.

The parties agree that CSRA covers plaintiffs and that plaintiffs are covered by a collective bargaining agreement between Local 512 and the Naval Air Rework Facility ("Local 512 Agreement"). Defendant urges that the subject matter of Count I is committed to the grievance and arbitration procedure of the Local 512 Agreement and therefore not susceptible to resolution other than by CSRA procedures. Plaintiffs argue that a declaration as to the meaning of the statute is unrelated to the collective bargaining agreement.

CSRA permits inclusion within the definition of a grievance "any complaint ... concerning ... any claimed violation, misinterpretation, or misapplication of any law,

rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C)(ii). A grievance is defined using these precise terms in article 42, section 2(c)(2) of the Local 512 Agreement. Neither travel pay nor any closely analogous right is included in the exceptions list of article 42, section 2(d). CSRA permits the exclusion of a subject from grievance procedure if the parties agree to that subject's exclusion. 5 U.S.C. § 7121(a)(2). The Local 512 Agreement, in fact, expressly reiterates the inclusion of grievances "where the grievant alleges Federal law or procedure was violated."

Insofar as the underlying dispute which forms the basis for Count I falls within the meaning of a grievance under the Local 512 Agreement, CSRA makes the grievance procedure exclusive for resolving the dispute. 5 U.S.C. § 7121(a)(1). Plaintiffs seek to avoid this result by framing the issue as one of statutory interpretation rather than collective bargaining. This argument is unavailing.

First, it bears note that the purpose of CSRA sets to rest any attempt to neatly segregate statutory issues and collective bargaining issues.

> A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the "outdated patchwork of statutes and rules built up over almost a century" that was the civil service system....
>
> .  .  .  .  .
>
> [CSRA] replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.

*United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 671–72, 98 L.Ed.2d 830 (1988) (quoting S.Rep. No. 969, 95th Cong., 2d Sess. 3 (1978), U.S.Code Cong. & Admin. News 1978, pp. 2723, 2725). In *Fausto*, the federal employee-plaintiff sought to invoke jurisdiction for a suit pursuant to the Back Pay Act to redress his suspension from work. The Supreme Court held that the deliberate exclusion of employees within his service category from the provisions of CSRA establishing judicial review for the type of personnel action at issue precluded jurisdiction in the Court of Claims pursuant to the Back Pay Act. *Id.* 108 S.Ct. at 677. Likewise, the deliberate inclusion of the suits of the type brought by plaintiffs within an exclusive remedial scheme precludes jurisdiction in this Court pursuant to 5 U.S.C. § 5704. The integrated scheme of CSRA requires recourse to its method for resolving the interplay between statutory benefits and collectively bargained benefits.

Second, the applicable statute and regulation contemplate that disputes arising thereunder will be committed to CSRA procedures. The statute provides for an entitlement when the use of an employee's car "is authorized or approved as more advantageous to the Government." The regulation uses nearly identical wording. By committing the relevant decision over the award of travel pay to the government, the statute and regulation gained a gloss from CSRA that established the latter statute's procedures as the forum for resolving travel pay disputes. The Supreme Court has interpreted the language of the Back Pay Act in a similar fashion. The Back Pay Act does not create an entitlement until an "appropriate authority under applicable law" makes a finding that an unjustified personnel action took place. From a time prior to the passage of CSRA, lower federal courts seized on that language to provide a basis to review personnel actions. The Supreme Court found that this language was altered by CSRA to exclude any court relying on Tucker Act jurisdiction from serving as an "appropriate authority" to review the underlying personnel action. *Fausto*, 108 S.Ct. at 676–77. Correspondingly, if § 5704 conferred jurisdiction prior to CSRA to review claims arising from travel pay disputes, a question not decided herein, then passage of CSRA modified the process for reviewing the decision to authorize or approve payment for mileage. Thus, in the context of employees covered

by a collective bargaining agreement that permits the filing of grievances over a travel pay dispute, this Court lacks jurisdiction to hear the same complaint.

Last, close examination of plaintiffs' claim reveals it to be one that "is grievable *and is a local, fact-specific issue.*" *Harris v. United States*, 841 F.2d 1097, 1100 (Fed.Cir.1988) (emphasis added). The dispute over payment for mileage centers on the unique situation in Jacksonville wherein two Naval Air Stations are quite close to each other and personnel frequently find themselves both on short-term and extended assignment to the base that was not their original permanent duty station. Declaration of the rights of the respective parties would immerse this Court in the local, fact-specific issues surrounding the designation of a permanent duty station and the duration of work at an alternate facility necessary to change that designation. "As the present matter is grievable, employees through their representatives can agree with the employer on a procedure for dealing with it, and here they did." *Id.*

If this Court did possess jurisdiction to entertain Count I, it would decline to do so. Since Count I procedurally relies upon the Declaratory Judgment Act, jurisdiction is discretionary. *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952); *Angora Enterprises, Inc. v. Condominium Ass'n,* 796 F.2d 384, 387 (11th Cir.1986). Congress expressed its preference for an integrated system of dispute resolution in the federal workplace. Even if this system fails to displace all federal jurisdiction for claims that can be resolved by its procedures, that preference should guide the decision by this Court to exercise jurisdiction in a discretionary situation. Notably, the fact that Local 512 and management bargained over the January 1987 policy urges caution in the decision to intervene in this suit. Plaintiffs may stand to secure a second bite of the apple by enjoying whatever benefits accompanied Local 512's concurrence in the policy change and by gaining the opportunity to overturn the quid pro quo that secured those benefits. Whether or not such

benefits were accrued is immaterial, however, since the potential for disrupting labor relations justifies the Court's refusal to exercise jurisdiction in this particular case.

■ Having found that CSRA undercuts declaratory action jurisdiction based on 5 U.S.C. § 5704 itself, the Court also finds that Little Tucker Act jurisdiction is absent. Recent precedent compels the conclusion that CSRA effected an implied repeal of Little Tucker Act jurisdiction. *See Fausto,* 108 S.Ct. at 676–77 (implied repeal of Tucker Act jurisdiction by CSRA); *Harris,* 841 F.2d at 1101 (implied repeal of Little Tucker Act jurisdiction by CSRA); *cf. Broughton v. Courtney,* 861 F.2d 639, 642–44 (11th Cir.1988) (preemption of state common law claims over matters within scope of CSRA). The *Harris* decision is dispositive of the issue of Little Tucker Act jurisdiction for Count II.

■ Count III, an action for breach of the duty of fair representation by plaintiffs' union, is contrary to the clearly established law of this Circuit. In *Warren v. Local 1759, American Federation of Government Employees,* 764 F.2d 1395 (11th Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985), the Eleventh Circuit carefully examined the structure of CSRA and concluded that Congress purposefully omitted authority for *Vaca*-type suits in the public sector. *Id.* at 1398–99. "[W]e hold that Congress conferred exclusive jurisdiction over a federal employees' duty of fair representation claim in the [Federal Labor Relations Authority]." *Id.* at 1399; *accord Karahalios v. Defense Language Inst.,* 821 F.2d 1389, 1391–93 (9th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 2032, 100 L.Ed.2d 617 (June 6, 1988). The Court is compelled to dismiss Count III as well.

Based on the foregoing analysis, it is

ORDERED AND ADJUDGED:

1. That defendant's Motion to Dismiss Plaintiffs' Amended Complaint—Class Action is hereby granted; and

2. That this action is hereby dismissed with prejudice.

DONE AND ORDERED.