Rose M. ADKINS, et al., and Bobby W. Adkins, et al., Plaintiff,

v.

UNITED STATES, Defendant.

Nos. 313–77, 363–80C.

United States Claims Court.

Jan. 12, 1990.

ORDER

HORN, Judge.

This Order is directed to Jeremiah Blackburn, the sole remaining plaintiff, of a total of 690 original plaintiffs, in the above-captioned consolidated cases, of Rose M. Adkins, et al. and Bobby W. Adkins, et al., Nos. 313–77 and 363–80C, respectively.

The case of Rose M. Adkins, et al., was originally filed with this court's predecessor, the United States Court of Claims on June 3, 1977 and assigned to Judge Wood. After a long period of very little activity, the case of Rose M. Adkins, et al., No.

313–77 was consolidated with the case of Bobby W. Adkins, et al., No. 363–80C, on February 13, 1981. At that time, 690 plaintiffs, who were wage grade employees at the Air Force's Aerospace Guidance and Meteorology Center in Newark, Ohio, sought environmental differential pay for injuries, allegedly caused by exposure to certain working conditions at the Center.

Since the case was filed, numerous Motions for Enlargements of Time, several Summary Judgment Motions on different issues, as well as Replies, and Responses, thereto, have been filed. On April 11, 1983, defendant's first Motion for Summary Judgment was filed. After multiple related filings, on November 8, 1983, Defendant's Motion for Summary Judgment was denied.

On October 1, 1984, Judge Wood dismissed the claims of 311 plaintiffs for failure of each such plaintiff to prosecute their case.

Defendant's second Motion for Summary Judgment was filed on November 30, 1984. Plaintiffs' counsel filed an Opposition on April 22, 1985, to which defendant filed a Reply on July 10, 1985. Plaintiffs' Supplemental Memorandum in Opposition to Defendant's Motion was filed on October 1, 1986, and defendant filed a response on October 3, 1986, to which plaintiffs' Reply was filed on October 16, 1986. On August 8, 1986, this case was reassigned to this judge, upon the retirement of Judge Wood. Then, on September 4, 1986, defendant filed yet another Summary Judgment Motion and plaintiffs filed their opposition thereto on October 10, 1986.

On December 12, 1986, proceedings in this consolidated case were suspended, pursuant to defendant's Motion to Suspend, Pending a decision by the United States Court of Appeals for the Federal Circuit in *Harris v. United States*, 841 F.2d 1097 (Fed.Cir.1988).

On August 4, 1988, plaintiffs' counsel filed a Motion for Leave to Withdraw as Attorney of Record for Certain Plaintiffs. Kevin M. Grile, who, at that time represented each of the plaintiffs in the case, was staff counsel for the American Federa-

tion of Government Employees (AFGE). In early May 1988, Mr. Grile had sent a mailing to all plaintiffs or to the estate representative substituted for deceased plaintiffs, which represented the position of plaintiffs' counsel as well as that of his employer, the American Federation of Government Employees, "that the current law suit should be withdrawn." The mailing included a "Summary Sheet on Need To Withdraw EDP Law Suit," a four page memo setting forth Mr. Grile's analysis of the plaintiffs' claims in light of *Harris v. United States,* 841 F.2d 1097 (Fed.Cir.1988) and a form on which each plaintiff could indicate his/her consent or express nonconsent to withdrawal of their name. Plaintiffs' attorney used the following categories to delineate the responses: (1) plaintiffs who have expressly stated their nonconsent to dismissal of their EDP claims; (2) plaintiffs who have not responded to counsel's request for consent or nonconsent, but the original mailings were not returned to counsel; (3) plaintiffs who had moved without giving counsel his/her new address, but for whom counsel was able to obtain a new address and mailed another analysis and request for consent/nonconsent to the new address without having the mailings returned; (4) plaintiffs who have moved without giving counsel his/her new home address and for whom counsel has been unable to obtain current addresses; (5) plaintiffs who have not responded to counsel's request for consent/nonconsent to dismissal, but whom [sic] counsel has been informed have passed away. Moreover, the appendices to plaintiffs Motion for Leave to Withdraw as Attorney of Record for Certain Plaintiffs, filed on August 4, 1988, categorized the plaintiffs according to the factors listed above. Plaintiffs' counsel's efforts to contact the plaintiffs continued following the initial Motion for Leave to Withdraw.

After considering numerous motions filed by both the defendant and the plaintiffs, each at different times, asking to both suspend and to lift the suspension of proceedings in this case, the court lifted the suspension on August 12, 1988.

On September 8, 1988, plaintiffs' counsel filed a Motion to Further Amend Motion for Leave to Withdraw, which contained new information about some plaintiffs who previously either would not authorize withdrawal of their claims or who had not communicated their consent or non-consent to withdrawal.

At a status conference held on September 15, 1988, based on the information offered by counsel for both sides, the court determined that it did not have sufficient information to properly decide whether dismissal of a particular plaintiff's case was appropriate. The court also determined that it would not be warranted in relieving Mr. Grile as counsel until the status of each plaintiff could be determined. The court, therefore, inquired of counsel as to the proper method of determining the status of the remaining claims of each plaintiff. In response to the court's inquiry, the plaintiffs' attorney suggested that he prepare a chart with each plaintiff listed in the left column and a succeeding column indicating the dates of the claims still pending before the court. Subsequently, on September 19, 1988, due to plaintiffs' counsel's filing of the Motion to Withdraw as Attorney of Record for Certain Plaintiffs, and in order to resolve the status of each plaintiff's claim as a result of *Harris v. United States,* supra, this court ordered the submission of a chart to include at least the following information with respect to each plaintiff: (1) name of plaintiff; (2) type of claim; (3) hiring date; (4) date of termination or death; and (5) applicable date of collective bargaining agreements.[1] In addition, the court scheduled oral argument for October 24, 1988, on the applicability of the *Harris, supra,* decision to the claims at issue in the above captioned cases.

On September 26, 1988, before the date already scheduled for the oral argument, at which counsel were to address the legal applicability to the cases before this court

---

1. The information which was to be included in the chart was revised pursuant to the court's order of October 18, 1988, in order for the court to obtain the information necessary to sort out possible surviving claims if *Harris, supra,* was found applicable.

of the *Harris, supra* decision, the parties filed a Joint Stipulation of Partial Dismissal, in which they cited *Harris v. United States, supra,* as the grounds for dismissal, and requested the dismissal of all claims governed by *Harris.* In the motion, however, the parties failed to specifically identify, by name or by plaintiff number, any of the 393 plaintiffs whose particular claims they believed should be dismissed. Furthermore, as previously noted, the discussions at the September 15 status conference showed that without further consideration, counsel for neither party could identify sufficiently which claims, if any, should survive, even if those claims based on the *Harris, supra* case should be dismissed. The only information before the court at that time, which tried to separate plaintiffs' claims but failed to do so adequately, to allow the court to rule on the Motion to Dismiss, was included in plaintiffs' counsel's Motion for Leave to Withdraw as Attorney of Record for Certain Plaintiffs, filed with the court on August 4, 1988. Therefore, on October 18, 1988, this court required the submission of the revised chart to be submitted on or before December 19, 1988.

The revised chart, as ordered to be submitted included the following categories and sub-categories. (1) name of plaintiff; (2) type of claim; (3) hiring date; (4) date of termination or death (indicate which); (5) applicable date of collective bargaining agreement(s); (6) whether plaintiff's claim is affected by *Harris v. United States;* (7) periods of time remaining, if any, not affected by *Harris v. United States,* for which plaintiff still could make a claim in this case (if so, give dates); (8) has the plaintiff been notified of the proposal to dismiss, if so, has plaintiff consented to dismissal, by: (a) notification; (b) express consent to dismissal; (c) express refusal to dismiss; (d) no response. At the request of the plaintiffs' and the defendant's counsel, on December 9, 1988, the court extended the due date for submission of the chart by requiring that it be submitted on or before January 9, 1989. In addition, also at the request of the plaintiffs and the defendant, the court Order dated December 9, 1988, postponed oral argument on the outstanding dispositive motions, then scheduled for December 19, 1988, until January 27, 1989.

On the same day, December 9, 1988, defendant's new attorney, who had filed a Notice of Appearance as attorney of record for defendant the previous day, petitioned the United States Court of Appeals for the Federal Circuit for a Writ of Mandamus and filed a Motion to Stay Proceedings in this court. Specifically, the United States petitioned for a writ directing the United States Claims Court to endorse the parties' Joint Stipulation of Partial Dismissal.[2] *In Re United States on Petition for Writ of Mandamus,* Miscellaneous Docket No. 227 (Fed.Cir. filed December 9, 1988).[3] In an effort to clarify the defendant's multiple filings, the United States Claims Court issued an order scheduling a status conference to be held on January 17, 1989.

This court finally received the "Table of Plaintiff's" detailing the status of individual plaintiffs which was finally submitted on

**2.** The Petition for Writ of Mandamus still did not identify individual plaintiffs by name or plaintiff number whose cases should be dismissed.

**3.** On December 15, 1988, the United States Circuit Court for the Federal Circuit, per Judge Bissell, ordered that: the United States Petition for Writ of Mandamus shall be held in abeyance because:

"... it does not appear that the Claims Court has refused to dismiss the claims, in question; rather it appears that it has requested further information before ruling on the stipulation....

   \*    \*    \*    \*    \*    \*

"Even assuming for the sake of argument that the position of the United States has merit, in view of the December 19 hearing [scheduled by the Claims Court] the United States' petition is premature."

The United States also was directed to file a status report within 10 (ten) days of the December 19, 1988 hearing before the United States Claims Court. On February 6, 1989 appellant's status report was filed. On February 22, 1989, the petitioner's Motion to Withdraw the Petition for Writ of Mandamus was filed. On March 6, 1989, the Clerk of Court for the United States Court of Appeals for the Federal Circuit issued an order granting petitioner's unopposed motion of February 22, 1989, and thereby dismissed the Petition for Writ of Mandamus.

January 9, 1989.[4] Therefore, prior to the January 17, 1989 status conference, this court reviewed the status of each plaintiff individually, and was able to identify the plaintiffs in accordance with the parties' representations that said individual plaintiff had consented to withdrawal of the law suit, had died, had not responded to plaintiffs' counsel's correspondence, or could not be located. Each plaintiff, within these four categories, was further segregated based on the following criteria: (1) claims which predated the collective bargaining agreement of 1979;[5] and (2) claims which only arose after the execution of the collective bargaining agreements.

Finally, in order to be sure that all plaintiffs had been completely informed of their options and had knowingly consented to withdrawal of their claims, on January 17, 1989, the court ordered plaintiffs' counsel to submit copies of correspondence between himself and the individual plaintiffs concerning counsel's request for written consent for the withdrawal of their claims. On January 27, 1989, this material was filed with the court.

On January 27, 1989, this court held oral argument on Defendant's Motion for Summary Judgment, based on *res judicata* as a result of an earlier decision in *Bendure v. United States*, 695 F.2d 1383 (Fed.Cir. 1982). At the oral argument, defendant conceded, contrary to its position taken in briefs filed earlier with the court, that *res judicata* does not bar all of the claims of the plaintiffs who have not consented to withdrawal who were also plaintiffs in *Bendure.*

On February 3, 1989, plaintiffs' counsel filed a Motion to Amend Joint Table filed January 9, 1989. The amendments to the table, corrected errors discovered by plaintiffs' counsel since the filing of the Joint Table Required by the Court's October 18, 1988, Order, and filed on January 9, 1989.

On February 14, 1989, 16 Cl.Ct. 294, based on all the information previously presented to this court the court issued two (2) orders which served to dismiss a total of 381 plaintiffs. One order dismissed the claims of 65 plaintiffs, based on the performance of work covered by a collective bargaining agreement on or after May 3, 1979, and the other order dismissed 311 plaintiffs, based on the consent of each plaintiff to the dismissal of all claims for environmental differential pay in the law suit.

On March 14, 1989, the court issued an order granting plaintiffs' counsel Motion for Leave to Withdraw as Attorney of Record for Certain Plaintiffs filed on February 3, 1989. Additionally, on March 14, 1989, the court issued an Order requiring all remaining plaintiffs, who desired to remain in this lawsuit, to file a notice with the court no later than May 15, 1989, indicating either a substitution of counsel or that the plaintiff wished to proceed in the case *pro se*. The Order stated that those plaintiffs who fail to inform the court by May 15, 1989 of their intention to remain in the lawsuit will have their claims dismissed in their entirety, with prejudice.

On March 15, 1989, the Clerk of the United States Claims Court mailed a copy of the court's March 14, 1989 Order by first-class mail, with the court's return address clearly shown on the envelope, to all remaining plaintiffs in the lawsuit. Also on March 15, 1989, the court issued an order, based on representations of plaintiffs' attorney, Kevin M. Grile, dismissing another plaintiff who had consented to the dismissal. As a result, there remained 76 plaintiffs with outstanding claims.

Over the next four months, 75 plaintiffs were dismissed. On May 31, 1989, this court, through two (2) Orders dismissed 70 plaintiffs, for failure to prosecute, based upon their failure to reply to the court's

---

4. It appears to this court that the Writ of Mandamus may have been filed in order to avoid the need to prepare the charts deemed necessary by this court in order to review the survivability of each plaintiff's claims.

5. All plaintiffs who were covered by the May 3, 1979 agreement and continued to work after its expiration, were also covered by the June 28, 1982 agreement. Furthermore, there was no gap in coverage for the relevant plaintiffs between the expiration of the first agreement and the execution of the second agreement.

March 14 and 15, 1989 Order and letter, respectively. Also, three (3) plaintiffs voluntarily expressed a desire to dismiss all of their claims in this suit and the court, on May 31, 1989, issued an order to that effect. Additionally, on June 2, 1989, and August 4, 1989, this court dismissed two more plaintiffs in this action for failure to prosecute their claims. This left one remaining plaintiff in the lawsuit of the original 690, Mr. Blackburn.

On June 2, 1989, the court issued an order to Mr. Blackburn, the sole remaining plaintiff in the case, directing him to clarify whether or not he wanted to pursue his claim in this action and if so, whether he intended to be represented by counsel or proceed *pro se*. Furthermore, this Order clearly imposed a July 14, 1989, deadline by which Mr. Blackburn was to respond to the court, if it was his decision to pursue his claim. Finally, the Order scheduled an August 1, 1989, status conference in the event that Mr. Blackburn opted to remain in the case.[6]

Mr. Blackburn mailed a letter to the United States Claims Court, post-marked July 8, 1989, wherein he discussed the factual background surrounding his injury and his inability to locate an attorney to represent him in this case. Mr. Blackburn also indicated that he would be available for the August 1, 1989 status conference, however, his letter did not indicate, in any manner, whether or not he intended to pursue his claim, as required in the March 14 and 15, 1989 Order and letter, as well as in the June 2, 1989 Order.

Jeremiah Blackburn appeared by telephone, *pro se*, for the August 3, 1989, status conference, counsel for the defendant also appeared.[7] During the conference, Mr. Blackburn requested that the court grant him further opportunity to attempt to secure legal representation and stated that he did not possess copies of all

of the documents filed with this court by his former legal counsel, Kevin M. Grile. Because the posture of this consolidated case had changed dramatically, and due to the *pro se* plaintiff's apparent lack of possession of documents from prior proceedings in this case, at the August 3, 1989 conference the court directed the Clerk's Office of the United States Claims Court to send Mr. Blackburn a copy of the United States Claims Court Rules and the necessary documentation associated with any outstanding motions before this court in the case.

On October 3, 1989, the court still unclear as to Mr. Blackburn's intentions, regarding pursuing his claim in this action, issued yet another Order which required the following: (1) the Clerk of the United States Claims Court shall send a copy of the Rules of the United States Claims Court, as well as a copy of all of the original documents associated with the Defendant's Motion for Summary Judgment, filed November 30, 1984, including any responses and replies to the dispositive motion; (2) the plaintiff may file, if he wishes, on or before December 1, 1989, a Motion to Supplement the Pleadings, in supplemental response to the defendant's pending Motion for Summary Judgment with respect to the plaintiff's claim for Environmental Differential Pay and (3) the defendant may file, if desired, on or before December 15, 1989, a response to plaintiff's filing described in item (2), immediately above.

On October 11, 1989, the Clerk's Office of the United States Claims court sent a letter to Mr. Blackburn which served to inform him that there had been forwarded to him via United Parcel Service, copies of the documents called for in the court's Order of October 3, 1989 in the above-captioned cases, i.e., the rules of this court as well as copies of all documents related to defendant's Motion for Summary Judg-

---

6. On July 28, 1989, the court issued an Order rescheduling the August 1, 1989, status conference for August 3, 1989.

7. In order to accommodate Mr. Blackburn, who lives in Wilmington, North Carolina, and who claims to have limited economic resources, the court allowed plaintiff, Blackburn, to appear by telephone, using a telephone and microphones in the courtroom, which allow all parties and the recorder who prepares the transcript, to hear a party who is not physically present in the courtroom.

ment filed November 30, 1984. The letter went on to explain that the originals of these documents, as well as the originals of all other documents, comprising the complete files in these cases, are in the Clerk's Office of the United States Claims Court. Furthermore, the letter noted that pursuant to the Order of October 3, 1989, Mr. Blackburn had until December 1, 1989 within which to file any supplementary filings in the case.

On October 31, 1989, the court received, back from the plaintiff, the material which the clerk's office had sent to him, along with a note, presumably written by the plaintiff, Blackburn, which indicated that he had only read a small portion of the material. In addition, a letter to Mr. Blackburn from Kathleen Shannon Glancy, Esq., dated October 5, 1989, was enclosed, in which she indicated she would not undertake the representation of Mr. Blackburn in this matter.

On November 3, 1989, the court received a letter from Mr. Blackburn informing the court that he again had attempted to obtain legal representation, but thus far to no avail. Furthermore, in the letter, Mr. Blackburn made an offer, to have someone at the court represent him in this matter and to split the results 50/50.

Based upon plaintiff's behavior in this matter, namely his decision to return the documents pertaining to this action, without fully reviewing them and without any explanation as to his future intentions regarding this case, the court, still uncertain as to the *pro se* plaintiff's position in this action in terms of going forward with the case, ordered the following on November 6, 1989:

1. If, plaintiff, Mr. Blackburn wishes to continue as a plaintiff in this action, he must complete and sign the attached Notice A and file it with the court no later than November 13, 1989. If plaintiff decides to proceed he must indicate to the court who will be representing him in this action, or that he intends to proceed *pro se.*

2. In the alternative, should plaintiff decide not to pursue the claims in this action he should complete and sign the attached Notice B and file it with the court no later than November 13, 1989.

The court went on to explain that it was incumbent on Mr. Blackburn to notify the court of his intention to pursue his claims by November 13, 1989, and to comply with the schedule as set forth in this order or face the possibility of having his claims dismissed, with prejudice, for failure to prosecute. Additionally, if Mr. Blackburn decided to pursue his claim in this matter a status conference was scheduled for November 17, 1989.

The court received no further written communications from Mr. Blackburn. The November 17, 1989 status conference was held as scheduled and the court, in session, placed a phone call to Mr. Blackburn, who then appeared by telephone. Defendant's counsel also appeared. At the status conference, the court once again explained to Mr. Blackburn the purpose of the conference, as well as the history and the present posture of the case. The court also verified that Mr. Blackburn had received the material related to defendant's dispositive motion. The court then read to him the court's November 6, 1989 order and explained the need to comply, as well as the ramifications of the failure to do so. The court then pointed out that Mr. Blackburn was to file the notice attached with the November 6, 1989 order in order to prosecute his claim, to which Mr. Blackburn responded, "All right, I will return the form to you then...."

The court then instructed Mr. Blackburn that in order to pursue his claim he would have to comply with the rules of the court. After the court had listened to Mr. Blackburn explain his various ailments, the alleged causes thereof, and his inability to located certain doctors, the court addressed the defendant's counsel. At this time, Mr. Blackburn in a fit of anger interrupted the court and yelled into the phone, "As far as I am concerned you can take it and stick it." [8] and hung-up. The court then, for the

---

8. It should be noted that it is the court's recollection, as well as that of others present in the

record, indicated that it would await the passage of the dates in the November 6, 1989 Order and then decide on a course of action.

To date, January 9, 1990, Mr. Blackburn has failed to respond to court's March 14, 1989, June 2, 1989, October 3, 1989, or November 6, 1989, Orders, or to contact the court concerning further prosecution of his case.

The last Order of November 6, 1989, required Mr. Blackburn to inform the court, on or before November 13, 1989, of his intentions, in terms of continuing as a plaintiff in this action or to withdraw as a plaintiff.

Once a case is commenced, it remains pending until it is either dismissed or adjudicated. 9 Wright & Miller, Civil § 2370 (1971) (citing, *Hackner v. Guaranty Trust Co. of New York*, 117 F.2d 95 (2d Cir.1941) *cert. denied* 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941)). The court has the power to dismiss the case involuntarily for want of prosecution by the plaintiff, or for failure of the plaintiff to comply with the rules or any order of the court. Wright, Law of Federal Courts, § 97 (4th ed.1982). The power to dismiss for failure to prosecute has long been recognized as resting largely in the discretion of the trial court. *See, e.g., Link v. Wabash Railroad Co.*, 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); *Adkins v. United States*, 816 F.2d 1580, 1581–82 (Fed.Cir. 1987).

It is well recognized that in order to prevent undue delays in the disposition of pending cases, federal trial courts have been given broad discretion to invoke rule 41(b) of the Federal Rules of Civil Procedure, which governs involuntary dismissals of pending actions. *Kadin Corporation v. United States*, 782 F.2d 175, 176 (Fed.Cir. 1986); *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). Rule 41(b), of the Rules of the United States Claims Court, RUSCC 41(b), 28 U.S.C. (Supp. IV. 1986), which is essen-

tially the same as Rule 41(b) of the Federal Rules of Civil Procedure, gives this court the authority to dismiss a plaintiff's action because of his failure to prosecute. RUSCC 41(b) provides in relevant part:

> (b) Involuntary dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication on the merits.

The notices sent to Mr. Blackburn on March 14, 1989 and again on November 6, 1989, were received by Mr. Blackburn as verified by the plaintiff in subsequent status conferences. Additionally, Mr. Blackburn, at the November 17, 1989 status conference, informed the court that he understood the importance of the Orders and the dates set out therein, and that he would file the required notice with the court. The duty to respond to a court Order, which in this case required an indication of an intention to prosecute this case, rests with the plaintiff. The plaintiff in this case, however, has not complied. This court is sympathetic with plaintiff's difficulties in obtaining representation and the difficulty of going forward *pro se* in a complicated case. Nonetheless, plaintiff's rude course of conduct, when the court has gone far beyond its required responsibilities to give the plaintiff numerous opportunities to perfect his claim, reflects a callous disregard for the rules and regulations of the federal courts and falls far short of the obligations a plaintiff owes to a court before which he has brought suit. The failure of plaintiff to notify the court of his intention to pursue his claim by the aforementioned deadlines and plaintiff's hanging-up on the

courtroom, that before Mr. Blackburn hung-up, in his state of anger, he used stronger language to express his attitude toward the court, how-

ever, the transcript of the status conference does not include Mr. Blackburn's full remarks.

court during a status conference, must be deemed a failure to prosecute.

Therefore, under the authority of RUSCC 41(b), the court, hereby ORDERS, that all of the claims of the plaintiff, Mr. Jeremiah Blackburn be dismissed, with prejudice, for failure to prosecute.

IT IS SO ORDERED.