**Judith VOLK, Plaintiff–Appellant,**

v.

**Dottie HOBSON, Eugene Charley, Timothy Clani, Bureau of Indian Affairs and Department of the Interior, Defendants–Appellees.**

No. 88–1497.

United States Court of Appeals, Federal Circuit.

Feb. 7, 1989.

Judith Volk, Rushville, Neb., pro se.

John S. Koppel, Dept. of Justice, Washington, D.C., for defendants-appellees. With him on the brief were John R. Bolton, Asst. Atty. Gen., Stephen M. McNamee, U.S. Atty. and Barbara L. Herwig.

Before FRIEDMAN and MAYER, Circuit Judges, and BALDWIN, Senior Circuit Judge.

OPINION

MAYER, Circuit Judge.

Judith Volk appeals the judgment of the United States District Court for the District of Arizona, No. 84–2418, holding that a private cause of action cannot be implied under 25 U.S.C. § 2011(e)(1)(B), and that Volk is precluded from maintaining a *Bivens* action because she failed timely to exhaust administrative remedies. We affirm the judgment, but for different reasons.

*Background*

On October 31, 1983, Volk entered into an employment contract with the Office of Indian Education Programs (OIEP), Bureau of Indian Affairs (BIA), Department of Interior, by which she was appointed to an excepted service position as an elementary school teacher at the Lukachukai Boarding School, Lukachukai, Arizona, for the period October 31, 1983, to June 1, 1984. In a January 4, 1984 letter, the principal of the school informed Volk that he proposed to remove her because she failed to disclose on the employment application that she had been fired from a previous teaching position.

Following the grievance procedure outlined in the negotiated agreement between the BIA and the National Council of the Bureau of Indian Affairs Educators (NCBIAE), Volk's bargaining representative, Volk and two representatives prepared a taped response to the principal's allegations. The OIEP Agency Superintendent for Education reviewed the response but decided that the reason stated in the notice of proposed removal was fully supported by the evidence and that removal was warranted. The superintendent notified Volk that her termination was to be effective March 16, 1984, and informed her of the procedures she could follow if she wished to request arbitration.

Volk retained legal counsel through the Arizona Education Association and requested a hearing under 25 U.S.C. § 2011(e)(1)(B). The request was denied by the OIEP on the ground that her right to appeal was limited to arbitration through the NCBIAE in accordance with the negotiated agreement between BIA and NCBIAE.

On March 19, 1984, Volk contacted the president of the NCBIAE and authorized him to request arbitration. By letter dated March 26, 1984, the president informed Volk that he needed more information about her termination before he could proceed to arbitration. Volk did not comply with the request until July 5, 1984. On August 3, 1984, the NCBIAE notified her that it refused to proceed with arbitration of her claim because of the untimeliness and substance of her case.

Volk thereupon filed a complaint with the Federal Labor Relations Authority (FLRA), No. 8–CO–40027, claiming that the NCBIAE had breached its duty of fair representation by refusing to invoke arbitration on her behalf. The FLRA found that the NCBIAE had not acted arbitrarily or capriciously and that its decision had not been motivated by bad faith. Concluding the NCBIAE was not otherwise obligated to process Volk's termination through arbitration, the FLRA dismissed the complaint.

Volk again requested arbitration on August 22, 1984. In a telephone conversation and subsequently in a letter dated October 5, 1984, the new president of the NCBIAE and an employee of the BIA office in Gallup, New Mexico, agreed that the Gallup office would begin proceedings to bring Volk's case to arbitration. But because Volk's request was untimely and there had been no request for an extension, the national personnel office of the BIA refused the case.

On November 28, 1984, Volk filed an appeal with the Merit Systems Protection Board, No. SF07528510169, which dismissed for lack of jurisdiction because she was a nonpreference "excepted service" employee, and accordingly was not entitled to Board review of her removal. This case in the district court ensued.

Alleging violations of her constitutional and statutory right to a hearing on her termination from the Lukachukai Boarding School, Volk sought injunctive relief against, and damages from, several BIA officials, the BIA, and the Department of Interior, and requested "loss of pay" and correction of her personnel record to clear her name. The federal defendants moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction.

The district court dismissed the complaint, concluding that 25 U.S.C. § 2011(e)(1)(B) does not afford a private right of action, that the government entities are immune from suit, and that, although Volk was entitled to bring suit for damages against the BIA officials in their individual capacities by *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), she was foreclosed by her failure timely to exhaust the administrative remedies available to her.

She appealed to the Court of Appeals for the Ninth Circuit which transferred the case to us, No. 87–2084 (June 23, 1988), citing *Brant v. Cleveland National Forest Service*, 843 F.2d 1222 (9th Cir.1988). We surmise the court viewed Volk's complaint as based in part on her employment contract with BIA and her prayer for "loss of pay" as seeking payment for the remainder of the contract term, and therefore founded on 28 U.S.C. § 1346(a)(2). While not free from doubt, we will also so construe her complaint, *cf. Christianson v. Colt Industries Operating Corp.*, —— U.S. ——, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988), and accept jurisdiction under 28 U.S.C. § 1295(a)(2). *See United States v. Hohri*, 482 U.S. 64, 72–73, 107 S.Ct. 2246, 2252, 96 L.Ed.2d 51 (1987).

*Discussion*

We agree with the district court that 25 U.S.C. § 2011(e)(1)(B) affords no private right of action, and that the government is immune, which Volk does not here question. But we cannot agree that *Bivens* gives Volk a cause of action against the employees allegedly at fault.

I

■ Section 2011(e)(1)(B) provides: "In prescribing regulations to govern the discharge and conditions of employment of educators, the Secretary shall require ... that no educator may be discharged with-

out notice of the reasons therefor and opportunity for a hearing under procedures that comport with the requirements of due process." As can be seen, no private right of action to redress violations of the statute is expressly provided. The next question, therefore, is whether Congress intended that there be a private right of action, that it is there by implication. As did the district court, we look to the "legislative history and purpose of the statute, the identity of the class for whose particular benefit the statute was passed, [and] the existence of express statutory remedies adequate to serve the legislative purpose ...," *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984), and conclude that Congress did not. The legislative record is silent on the matter and implying a private remedy for damages against federal officials in section 2011(e)(1)(B) would conflict with the statutory and administrative scheme.

By 25 U.S.C. § 2011(a)(1), Congress excluded BIA educators from the coverage of those provisions of the Civil Service Reform Act of 1978 (CSRA) that relate to the appointment, promotion and removal of civil service employees. Section 2011(b) instead directs the Secretary of Interior to prescribe regulations governing the appointment and discharge of educators. Section 2011(e) tells the Secretary what regulations covering discharges of employees must contain; to that extent, we can assume, the teachers were intended to benefit. But no part of it enables one who perceives herself aggrieved to base a suit on the statute.

In accordance with sections 2011(b) and (e), in 1979 the Secretary adopted procedures to govern discharges for cause in 25 C.F.R. 38.7(d). These were superseded by those set out in the collective bargaining agreement negotiated between the BIA and the NCBIAE as permitted by 5 U.S.C. § 7121, and which apply to Volk.* Nothing suggests Congress intended BIA educators

to have statutory remedies in addition to the negotiated procedures. To the contrary, section 7121(a)(1) says that "the procedures [provided in the collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage."

In *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), Fausto, like Volk, was a nonpreference eligible excepted service federal employee, excluded from the administrative and judicial review procedures afforded certain other categories of federal employees by the CSRA. Through an action founded on the Back Pay Act, 5 U.S.C. § 5596, Fausto nonetheless sought judicial review of the decision of the Department of Interior to suspend him from his job. In view of the integrated system created by the CSRA, the Supreme Court concluded that to allow a remedy not otherwise provided for in the statutory scheme would upset the balance carefully wrought by Congress between "the legitimate interests of the various categories of federal employees [and] the needs of sound and efficient administration." 108 S.Ct. at 672. We think this reasoning applies with equal force here where Congress carefully excused the Secretary from complying with the cumbersome civil service rules that might otherwise govern educators, but required that a specified regime be implemented to govern discharge cases like this one. Congress can be deemed to have intended that this be the only remedy available; the very existence of the remedy is evidence that it surely did not intend a private right to sue based on section 2011(e)(1)(B).

## II

■ We next consider whether, in the absence of a statutory cause of action, Volk may sue on the authority of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

* The government now tells us there is some question whether the agency has authority under 5 U.S.C. § 7121 to agree to binding arbitration for excepted service employees. We need offer no view on that because in this case it is undisputed that the agency would have gone to arbitration in accordance with its agreement with NCBIAE if it had been timely requested by the union.

(1971), for alleged due process violations in her termination. The district court said the Department of Interior and BIA are immune, which Volk does not here question. But the court also said the named employees may be sued in their individual capacities. Contrary to this conclusion, we think not.

*Bivens* permitted an action for damages founded directly upon the fourth amendment of the Constitution. But, the Supreme Court cautioned against creating a damage remedy where there is an "explicit congressional declaration" that the injured parties should be "remitted to another remedy, equally effective in the view of Congress," *id.* at 397, 91 S.Ct. at 2005, or where there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 396, 91 S.Ct. at 2005.

*Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983), concluded that the "elaborate [civil service] remedial system that has been constructed step by step, with careful attention to conflicting policy considerations" constitutes a "special factor" precluding a *Bivens* cause of action. The Supreme Court recognized that "civil service remedies ... did not fully compensate [Bush] for the harm he suffered" as a result of the violation of his constitutional rights, *id.* at 372, 103 S.Ct. at 2408, and that, absent a *Bivens* cause of action, his wrong might "otherwise go unredressed." *Id.* at 388, 103 S.Ct. at 2416. But the dispositive question is not "the merits of the particular remedy that [is] sought," but "who should decide whether such a remedy should be provided." *Id.* at 380, 103 S.Ct. at 2413. The complete answer to Volk's complaint that her remedies were inadequate, was given in *Bush:* "In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service." *Id.* at 389, 103 S.Ct. at 2417.

Bush, of course, was a "tenured" competitive service employee who had the full panoply of civil service protections available to him. But that was not critical to the Court's decision. The lesson of *Bush* is not that courts should assess the efficacy of existing remedies, but that they should abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme. To do otherwise would be to disrupt the system and judicially create classes of preferred employees that Congress intentionally placed in a nonpreferred position, thereby inverting the statutory scheme.

The Court knows, for example, that probationary employees have no remedy whatsoever for adverse personnel actions but nevertheless allows them no *Bivens* actions. *Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988), citing *Bush,* 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28. And it closed the door on even statutory avenues of relief if the aggrieved employee could not have obtained judicial review of the agency's action under the CSRA itself. *Fausto,* 108 S.Ct. at 676.

The Supreme Court's latest pronouncement on the "special factors" concept is *Schweiker v. Chilicky,* in which respondents' Social Security benefits had been improperly terminated, allegedly as a result of due process violations by government officials charged with administering the Social Security program. The Court said the case was indistinguishable from *Bush* because "[h]ere, exactly as in *Bush,* Congress has failed to provide for 'complete relief.'" 108 S.Ct. at 2468. But the Court again declined to recognize a *Bivens* remedy: "When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations" a new substantive legal liability will not be created. *Id.; see Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988) (en banc). That is precisely what we have here. Congress designed this statutory program specifically for BIA educators, excepting them from specified aspects of the CSRA, but balancing the needs of the agency and the interests of the employees. The scheme is therefore constitutionally sufficient and complete.

The result is not harsh, though even if it were, remediation would be for Congress. Volk was in the excepted service, which normally has few of the procedural rights enjoyed by the competitive service, the quid pro quo for facing less onerous hiring requirements, but she had the benefit of 25 U.S.C. § 2011(e). By section 2011(a) the teachers chose to exercise their right under another provision of the CSRA that did apply to them, 5 U.S.C. § 7121, to establish the grievance procedure in lieu of secretarial regulations under section 2011(b). This afforded a process for appeal and review of Volk's termination. Only because of tardiness, as the district court found, was she unable to exhaust it.

Volk also had access to two other aspects of the congressional scheme, the FLRA, and the Special Counsel of the Merit Systems Protection Board. She took advantage of the FLRA avenue, resulting in an investigation which concluded there was no violation for that agency to pursue. But she did not approach the Special Counsel which, according to the government, "is explicitly given jurisdiction to investigate the types of constitutional claims and grievances presented...." Established under 5 U.S.C. § 1204, the Special Counsel is intended " 'to be the watchdog of the merit system, a watchdog which should not be ignored by employees anxious to resort to federal court.' " *Harrison v. Bowen*, 815 F.2d 1505, 1516 (D.C.Cir.1987), citing *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir.1985). It is "a largely autonomous public prosecutor with broad investigative powers," 815 F.2d at 1512, such as the right to issue nationwide subpoenas, 5 U.S.C. § 1205(b)(2)(A), administer oaths, examine witnesses, take depositions and receive evidence, *id.* § 1205(b)(1).

Of course, as a prosecutor the Special Counsel cannot represent an employee as her counsel in the traditional sense by establishing an attorney-client relationship, but of necessity the aggrieved employee who presents a meritorious case will be the vehicle for vindicating the merit system and its principles. If the Special Counsel takes the case before the Merit Systems Protection Board, not only will the merit system, the intended beneficiary, be served, but the catalyst and vehicle for the prosecution, the employee, may well secure the corrective action she seeks as an incidental beneficiary of the Special Counsel's efforts.

All of this was provided by Congress as a package. Whether or not an employee has access to all of the procedures and remedies of the CSRA, or, as here, fails to fully avail herself of those she has, it illustrates the logic inherent in the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress. It is far better positioned to set the policy and adjust the system than judges confronting ad hoc situations and trying to fill perceived gaps in the program by allowing employees to prosecute *Bivens* suits against each other.

After *Chilicky*, the Supreme Court vacated and remanded the case upon which the district court chiefly relied here, *Kotarski v. Cooper*, 799 F.2d 1342 (9th Cir.1986), *vacated and remanded sub nom. Cooper v. Kotarski*, ―― U.S. ――, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988). See also *McIntosh v. Weinberger*, 810 F.2d 1411 (8th Cir. 1987), *vacated and remanded sub nom. Turner v. McIntosh*, ―― U.S. ――, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988). In *Kotarski*, petitioner, like Volk, was afforded limited rights of review under the CSRA. Assessing the available procedures, the Ninth Circuit concluded that they were not "sufficient to give meaningful protection to [the employee's] constitutional rights," *Kotarski*, 799 F.2d at 1347, and held a *Bivens* cause of action was available. The Supreme Court's action on *Kotarski* is not necessarily a reversal, of course, but it undermines the foundation of Volk's appeal here. "Whether or not we believe its response was the best, Congress is the body charged with making the inevitable compromises required in the design of a massive and complex ... program." *Chilicky*, 108 S.Ct. at 2470. Accordingly, it is not for us or the district court to go beyond Congress by augmenting the CSRA with a

*Bivens* cause of action.**

*Conclusion*

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

** We also affirm the order of the district court denying Volk's motion to reconsider appointment of counsel. "Motions for appointment of counsel under [28 U.S.C. § ] 1915 are addressed to the sound discretion of the trial court and are granted only in exceptional circumstances." *United States v. McQuade,* 647 F.2d 938, 940 (9th Cir.1981). We see no abuse in the district court's conclusion that exceptional circumstances are not present here.