Carl CARTER, Frank Percina, William E. Dunn, Donald Honaker, Carolyn Hudson, Clara Morrison, Charlene Limenih and Similarly Situated Unnamed Plaintiffs, Plaintiffs–Appellants,

v.

Lawrence GIBBS, James A. Baker III and The United States of America, Defendants–Appellees.

No. 88–1576.

United States Court of Appeals, Federal Circuit.

Aug. 31, 1989.

Rehearing Denied Nov. 20, 1989.

Gregory O'Duden, Director of Litigation, of Nat. Treasury Employees Union, Washington, D.C., argued, for plaintiffs-appellants. With him on the brief, were Clinton Wolcott, Michele L. Rusen and Lucinda A. Riley, Asst. Counsel.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendants-appellees. With him on the brief, were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Jane W. Vanneman, Atty., of counsel.

Before FRIEDMAN, MAYER, and MICHEL, Circuit Judges.

FRIEDMAN, Circuit Judge.

The question in this case, here on appeal from the United States District Court for the Central District of California, is whether government employees who are covered by a collective bargaining agreement containing a grievance procedure that does not exclude overtime claims under the Fair Labor Standards Act are precluded by the Civil Service Reform Act of 1978 from maintaining a suit in the district court for overtime pay under the Fair Labor Standards Act. The district court held that the Civil Service Reform Act bars such a suit. *Carter v. Gibbs,* 690 F.Supp. 897 (C.D.Cal. 1988). We reverse.

**I**

A. *The Statutes.* This case presents issues involving the interplay of provisions in two statutes governing the rights of federal employees, section 16(b) of the Fair Labor Standards Act of 1938 (FLSA) and section 7121 of the Civil Service Reform Act of 1978 (Reform Act).

1. *Section 16(b) of the Fair Labor Standards Act of 1938.* As originally enacted, section 16(b) of the Fair Labor Standards Act of 1938, ch. 676, § 16, 52 Stat. 1069, did not cover federal employees. It provided:

Any employer who violates the provisions of section 206 [minimum wage provision] or section 207 [maximum hours provision] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of

competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (1940). The terms "employer" and "employee," as defined in sections 203(d) and 203(e), respectively, specifically excluded federal employees. Section 203(d) defined "Employer" as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States," and section 203(e) defined "Employee" as "includ[ing] any individual employed by an employer."

In the Fair Labor Standards Amendments of 1966, Pub.L. No. 89–601, § 306, 80 Stat. 830, *reprinted in* 1966 U.S.Code Cong. & Admin.News 978, 990, Congress added section 218(b) to provide that approximately 685,000 federal employees—"certain Federal wage board employees, employees of naval facilities whose wages are established to conform with those in the immediate vicinity, and employees in nonappropriated fund instrumentalities of the Armed Forces"—were to receive a minimum wage and overtime pay not less than that provided in the FLSA (29 U.S.C. § 206(a)(1) and 29 U.S.C. § 207(a)(1), respectively). S.Rep. No. 1487, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3002, 3036. Congress, however, did not amend the statutory definitions of employer or employee, and there is no indication that Congress intended to make applicable to those employees any other provision of the FLSA. *See* 1966 U.S.Code Cong. & Admin.News at 3036.

In the Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, 88 Stat. 55, *reprinted in* 1974 U.S.Code Cong. & Admin.News 55, Congress extended the Act to cover, among others, most federal employees in nonsupervisory positions. It did so by changing the definition of "Employer" to "include[ ] a public agency," 29 U.S.C. § 203(d), which section 203(x) defined to include the "Government of the

United States." The definition of "Employee" was changed to include "any individual employed by the Government of the United States" in six specified broad categories. 29 U.S.C. § 203(e). Section 216(b) was amended to give federal employees the right to sue the United States for violation of the minimum wage and maximum hour provisions of the FLSA by substituting the phrase "maintained against any employer (including a public agency) in any Federal or State Court" for the "maintained in any court of competent jurisdiction" language of the original 1938 Act. Section 216(b) now provides in pertinent part:

> An action to recover the liability prescribed [covering minimum wage and overtime pay] ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

2. *Section 7121 of the Civil Service Reform Act of 1978.* Prior to 1978, labor-management relations in the federal sector were governed by a 1962 Executive order. *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 91, 104 S.Ct. 439, 441, 78 L.Ed.2d 195 (1983). As part of the Reform Act's "comprehensive[ ] overhaul [of] the civil service system," *Lindahl v. OPM,* 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985), title VII of the Act provided a statutory basis and framework for labor-management relations in the federal sector.

Section 7121 of the Act requires that, with certain exceptions discussed below, "any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability," and that "the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). Grievance is defined broadly in section 7103(a)(9) to include any complaint by "any employee concerning any matter relating" to his or her employment, "any labor organization concerning any matter relating to the employment of any employee," or "any employee, labor organization, or agency concerning— ...

any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment."

Subsection 7121(a)(2) provides that a collective bargaining agreement may exclude from its grievance procedures any matter that otherwise would be subject to those procedures. Subsection (b) provides that "any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency." Subsection (c) excludes certain matters from the grievance procedure, *e.g.*, retirement, insurance, suspensions or removals under section 7532, certifications or appointments, and certain classifications. Subsections (d) and (e) provide that employees who believe that they have been subject to prohibited personnel practices under section 2302(b)(1), employees who have been demoted or removed under section 4303, and employees who have been subject to adverse actions under section 7512, may pursue their claims through either the negotiated grievance procedure or other statutory procedures, but not both. Where an employee claims discrimination, the employee may file a grievance and, if he or she is not satisfied with the resolution of the grievance, may pursue the claim before the Merit Systems Protection Board or the Equal Employment Opportunity Commission.

B. *The Facts of This Case.* The seven named appellants are revenue officers and tax auditors employed by the Internal Revenue Service (IRS) who brought the present action in the district court seeking recovery of unpaid overtime compensation as well as liquidated damages and attorney's fees. *See* 29 U.S.C. § 216(b). All are members of the National Treasury and Employees Union (Union), and are subject to a collective bargaining agreement between the Union and the IRS. The collective bargaining agreement, negotiated pursuant to chapter 71 of 5 U.S.C., does not specifically exclude FLSA overtime pay claims from the grievance procedures.

After the complaint was filed, some 300 federal employees have joined the action, in accordance with 29 U.S.C. § 216(b).

On the government's motion, the district court dismissed the complaint for lack of subject matter jurisdiction, on the ground that the Reform Act "preempted" the appellants' FLSA cause of action. The court stated:

§ 7121 requires a collective bargaining agreement to contain grievance procedures. The parties to the agreement may exclude any matter from the grievance procedures. If a matter is not excluded by agreement, it must go through the established grievance process unless [it is] of the type specified in subsections (c), (d) or (e), which do not apply in this case.

The parties do not dispute that the overtime claim is a grievance within the above definition, or that the claim is grievable through the collective bargaining agreement. The collective bargaining agreement entered into between the Union and the government does not exclude FLSA matters from operation of the grievance procedures.

On a literal reading of the [sic] § 7121, plaintiffs' FLSA rights are within the exclusive jurisdiction of the grievance procedure. An FLSA claim is a grievance within the meaning of the statute, and is not excepted from the exclusive procedures by any subsection of § 7121.

The court further stated:

This Court does not share plaintiffs' belief that the CSRA impliedly repealed judicial review of a federal employee's FLSA claim. Judicial review is still available for all federal employees not covered by a collective bargaining agreement, and for those employees covered where the collective bargaining agreement excludes FLSA claims from the grievance process. The CSRA did not impliedly repeal any part of the FLSA; it instead created a specific exception to the general enforcement scheme that parties to a collective bargaining are free to eliminate by agreement.

690 F.Supp. at 898, 900.

II

A. Although the district court held that the Reform Act "preempted" the appel-

lants' cause of action under the FLSA, we think the proper inquiry is whether the Reform Act repealed by implication the appellants' right to sue under the FLSA. Preemption is a concept ordinarily used to determine whether a federal statute precludes the application of State law to a situation that both laws cover. *See, e.g., Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). Here, however, the issue is whether one federal statute—the Reform Act—eliminates the right to sue previously granted by another federal statute—the FLSA. The issue, therefore, is not whether the Reform Act preempts the FLSA, but whether it supersedes it to the extent of barring the appellants from invoking the right to sue that the FLSA gave them.

Section 216(a) of the FLSA gives all federal employees (with certain exceptions not here applicable) the right to bring an action in the district court to recover the minimum wage and overtime pay that the FLSA prescribes. If, as the district court held, section 7121 of the Reform Act bars employees covered by a collective bargaining agreement containing a grievance procedure that does not except FLSA claims from maintaining an FLSA suit, the effect of section 7121 is to eliminate the statutory right to sue that section 216(a) confers. This is a *pro tanto* repeal by implication of the general right to sue that section 216(a) gives to federal employees, since for those employees that right no longer exists because section 7121 has eliminated it. The elimination is not express but is by implication, since it is an inference drawn from the provision in section 7121(a)(1) that the bargaining agreement grievance procedures "shall be the exclusive procedures for resolving grievances which fall within its coverage."

In *United States v. Fausto*, 484 U.S. 439, ——, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988), the Supreme Court recently reiterated its agreement with the principle of statutory construction that "repeals by implication are strongly disfavored." *See also Rodriguez v. United States*, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) ("repeals by implication are not favored"); *Randall v. Loftsgaarden*, 478

U.S. 647, 661, 106 S.Ct. 3143, 3152, 92 L.Ed.2d 525 (1986) (" '[i]t is, of course, a cardinal principle of statutory construction that repeals by implication are not favored' "); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974) ("repeals by implication are disfavored"). The consequence is that "a later statute will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two." *Fausto*, 484 U.S. at ——, 108 S.Ct. at 676.

The government argues that "there is a 'clear repugnancy' between the 'exclusive procedures' language contained in 5 U.S.C. § 7121(a)(1) and the right-to-sue language contained in 29 U.S.C. § 216(b)." We disagree. "There is no 'irreconcilable conflict' here between the two Acts, nor is this a case in which 'the later act covers the whole situation of the earlier one and is clearly intended as a substitute.' " *Randall v. Loftsgaarden*, 478 U.S. 647, 661, 106 S.Ct. 3143, 3152, 92 L.Ed.2d 525 (1986) (citations omitted).

The exclusivity feature of section 7121(a)(1) states that the grievance procedure shall be the "exclusive procedure for resolving grievances" that it covers. There is no "clear repugnancy" between making the collective bargaining procedure the exclusive method for the resolution of grievances that arise in labor management relations (including grievances relating to overtime pay) and permitting federal employees to maintain suit in the district court to recover overtime pay due them under the FLSA. The two statutory schemes deal with different situations, and permitting FLSA suits would not interfere with the operation of the collective bargaining grievance procedure.

Moreover, there are indications in the legislative history of the Reform Act that Congress intended the "exclusive procedures" provision to foreclose access only to alternative administrative procedures for settling disputes, and not to bar judicial remedies expressly provided by other stat-

utes. *See Karahalios v. National Federation of Federal Employees,* —— U.S. ——, 109 S.Ct. 1282, 1288, 103 L.Ed.2d 539 (1989) ("the collective-bargaining mechanisms created by Title VII do not deprive employees of recourse to any of the remedies otherwise provided by statute or regulation"). The Conference Report on the final bill stated:

> Senate section 7221(a) provides that, except for certain specified exceptions, an employee covered by a collective bargaining agreement must follow the negotiated grievance procedures rather than the agency procedures available to other employees not covered by an agreement. House section 7121(a) does not limit the employee to the negotiated procedures in the case of any type of grievance.

> The House recedes.

H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 157, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2860, 2891.

There is nothing in the language or the legislative history of section 7121 that indicates that Congress intended to repeal or curtail the right of federal employees to sue in district court under the FLSA. Indeed, since Congress had created that right only four years earlier in 1974, one would think that if Congress had intended the Reform Act to take away that right for the substantial number of federal employees covered by collective bargaining agreements, it would expressly have so provided or stated. As the Supreme Court noted in *Fausto,* the purpose of the Reform Act was to "replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." 484 U.S. 439, ——, 108 S.Ct. 668, 676 (1988) (citation omitted).

B. The district court relied heavily on Congress' deletion of a provision in the original Senate bill that would have specifically excluded FLSA matters from the scope of a negotiated grievance procedure. The district court stated:

> The original Senate version of the CSRA considered FLSA claims to be a specific exception to the exclusivity provisions of 7121(a), so that FLSA claims could never be grieved.... [T]he deletion of the Senate's original version makes clear that FLSA claims are grievable.

> Plaintiffs argue that deletion of the Senate version says nothing of whether *judicial* enforcement of the FLSA was intended to be barred—only of whether Congress intended that FLSA claims could be grieved. The Court disagrees. The original Senate version contemplated excluding FLSA claims from the grievance procedures, but Congress decided not to do so. By specifically allowing FLSA claims to become grievable, Congress must have intended that FLSA claims would then be subject to the exclusivity provisions of § 7121(a). There is no clear evidence to suggest that it intended otherwise, and the clear statement in the Act is not ambiguous.

690 F.Supp. at 899.

The provision of the Senate bill upon which the district court relied stated:

> (d) A negotiated grievance procedure may cover any matter within the authority of an agency if not inconsistent with the provisions of this chapter, except that it may not include matters involving examination, certification and appointment, suitability, classification, political activities, retirement, life and health insurance, national security or the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.).

S. 2640, 95th Cong., 2d Sess. § 7221(d) (1978), *reprinted in* 1 Legislative History of the Civil Service Reform Act of 1978, at 1832 (1979) [hereinafter *Legislative History* ].

That provision, however, specified only the subjects that a negotiated grievance procedure could not cover. Congress' deletion of FLSA matters from the final list of nongrievable subjects does not indicate, or even suggest, that Congress thereby intended to extinguish the right of federal employees to bring suit in court under 29 U.S.C. § 216(b).

Section 7221(d) of the Senate bill was virtually identical to a provision in the Administration's original proposal for title VII of the Reform Act, which both Houses of

Congress considered. The Comptroller General urged the House Committee to eliminate FLSA matters from the list of nongrievable subjects the Administration had proposed. In his letter he noted that because employees could raise the same kinds of issues in a complaint under 5 U.S.C. § 5542 that are involved in FLSA claims, he recommended that "arbitration of overtime claims based upon the FLSA be permitted." *Legislative History of the Federal Service Labor Management Relations Statute, Title VII of the Civil Service Reform Act of 1978,* Comm. Print No. 7, 96th Cong., 1st Sess. 1126 (1978).

The House Committee bill deleted FLSA claims from the list of nongrievable matters set forth in section 7121(d). H.R. 11280, 95th Cong., 2d Sess. § 7121(d) (1978), *reprinted in* 1 *Legislative History* at 1259. That change, however, would have had no effect on an employee's right to file FLSA court suits, because the House Committee bill provided that the negotiated grievance procedures would be elective only and not the exclusive procedure for resolving grievances. The House Committee's deletion of FLSA claims from the list of nongrievable matters "would not constitute the 'clear and manifest' evidence of congressional intent necessary to establish repeal by implication." *Rodriguez v. United States,* 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam). There is no suggestion in the legislative history that in deleting FLSA matters from the exceptions in section 7121(d), Congress intended that the exclusivity provision in the Senate bill would apply. Indeed, the bill the Senate passed would have excluded FLSA matters from the grievance procedures altogether. S. 2640, 95th Cong., 2d Sess. § 7221(d) (1978), *reprinted in* 1 *Legislative History* at 1832.

C. In *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court dealt with a closely related issue. The question there was "whether an employee may bring an action in federal district court, alleging a violation of the minimum wage provisions of the Fair Labor Standards Act, 52 Stat. 1060, as amended, 29 U.S.C. § 201 *et seq.,* after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to the provisions of his union's collective-bargaining agreement." 450 U.S. at 729–30, 101 S.Ct. at 1439. The collective bargaining agreement required that "any controversy" between the parties "be resolved through the binding contractual grievance procedures." *Id.* at 736, 101 S.Ct. at 1442.

The Court held that the employees' right to bring suit under the FLSA "is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures." *Id.* at 745, 101 S.Ct. at 1447. The Court explained that "Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and ... these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum." *Id.* The Court noted that "[t]here are two reasons why an employee's right to a minimum wage and overtime pay under the FLSA might be lost if submission of his wage claim to arbitration precluded him from later bringing an FLSA suit in federal court." *Id.* at 742, 101 S.Ct. at 1445. The Court explained:

> First, even if the employee's claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration.... Since a union's objective is to maximize overall compensation of its members, not to ensure that each employee receives the best compensation deal available, a union balancing individual and collective interests might validly permit some employees' statutorily granted wage and hour benefits to be sacrificed if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole. [Citation omitted].

> Second, even when the union has fairly and fully presented the employee's wage claim, the employee's statutory rights might still not be adequately protected.... [M]any arbitrators may not be conversant with the public law considerations underlying the FLSA.... [They]

may lack the competence to decide the ultimate legal issue whether an employee's right to a minimum wage or to overtime pay under the statute has been violated.

. . . .

Finally, not only are arbitral procedures less protective of individual statutory rights than are judicial procedures, but arbitrators very often are powerless to grant the aggrieved employees as broad a range of relief. Under the FLSA, courts can award actual and liquidated damages, reasonable attorney's fees, and costs. . . . It is most unlikely that [an arbitrator] will be authorized to award liquidated damages, costs, or attorney's fees. [Citations omitted].

*Id.* at 742–43, 744–45, 101 S.Ct. at 1445–46, 1446–47 (citations and footnotes omitted).

The government correctly notes that section 7121 is "not comparable to any statute applicable to the private sector." The concerns the Court expressed in *Barrentine,* however, are no less applicable to the present case.

Here, too, the unions may decide not to pursue a claim vigorously in or through all the steps of the grievance procedure, and the arbitrator may not have the competence to resolve the complex issues that FLSA claims may raise. Similarly, the relief that an employee could obtain under the grievance procedure could be substantially less than that available under the FLSA. In the grievance procedure the employee could not obtain liquidated damages in addition to the backpay to which he or she is entitled, or attorney fees and costs. We therefore cannot accept the government's argument that "the relief available in federal sector arbitration of FLSA cases is not significantly different than the relief available from the courts."

Indeed, in one respect, the present case is stronger than *Barrentine* for permitting the FLSA suit. In *Barrentine* the employees already had utilized the grievance procedure to assert their backpay claim but had lost there; that fact did not bar their subsequent FLSA suit. In the present case, however, the employees never invoked the grievance procedure for their FLSA overtime claim, but asserted those claims only in their court case.

D. Finally, the government refers to 5 U.S.C. § 5542, which provides for the payment of overtime to government employees in specified circumstances. The government points out that claims for such overtime would be grievable and therefore under *Harris v. United States,* 841 F.2d 1097 (Fed.Cir.1988), would be subject to the exclusivity provision in section 7121(a)(1). The government argues that "it simply would make no sense for Congress to dictate that claims for overtime pay under the FLSA and title 5 be subject to non-parallel resolution," *i.e.,* that "[g]rievable FLSA claims would be subject to resolution through both negotiated grievance procedures and through the filing of suit, while title 5 overtime claims could only be grieved."

We see no anomaly in giving federal employees the choice of asserting FLSA claims either through the grievance procedure or in court. Indeed, *Barrentine* sanctioned precisely that dichotomy for private employees. Moreover, in *Harris,* in holding that grievable claims for environmental differential pay authorized by 5 U.S.C. § 5343 may not be brought under the Tucker Act, this court pointed out that "[a]n entitlement created by nationwide federal law, as for example to statutory overtime under the Fair Labor Standards Act, 29 U.S.C. § 216(b), would be a different matter. . . ." 841 F.2d at 1100.

## CONCLUSION

The judgment of the United States District Court for the Central District of California is

REVERSED.

MAYER, Circuit Judge, dissenting.

The Civil Service Reform Act is unambiguous: "the procedures [set out in the collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). There is no dispute that Carter's, and the other appellants', overtime claim, premised on an alleged vio-

lation of section 7 of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, is a "grievance" subject to the negotiated procedures. *See* 5 U.S.C. § 7103(a)(9)(C)(ii). But he says the section 7121(a)(1) exclusivity prescription does not pertain, and accordingly he is entitled to bring suit in district court. There is no support for this proposition in either the statute or precedent, and I cannot join the court's endorsement of it today.

In subsections (d) and (e) of section 7121, Congress specifically identified the grievances for which the negotiated procedures are not exclusive; Carter's overtime claim is not among them. In subsection (c), Congress specified matters that could not be resolved by negotiated procedures; overtime claims are not listed. This absence of an express provision for overtime claims was not the product of congressional inattention to the FLSA. To the contrary, the original Senate version of section 7121(c) expressly included FLSA claims among those matters that could not be grieved. But that proviso was removed in conference, and an exception was retained for only one aspect of the FLSA, the Equal Pay Act, 29 U.S.C. § 206(d), which is now under section 7121(d).

Without basis in the CSRA or its history therefore, Carter's argument is premised on the principle of statutory construction that "silent repeals of express statutory text are strongly disfavored." Absent an express repeal of the judicial access afforded by section 16 of the FLSA, 29 U.S.C. § 216, Carter contends that the CSRA cannot be construed as having implicitly done so. I agree, but don't see how this gets him into the district court.

Now, as before the CSRA, federal employees are entitled to "recover [overtime compensation] against [the government] in any ... court of competent jurisdiction." *Id.* § 216(b). The effect of Congress' decision to retain FLSA claims within the ambit of grievable matters, however, is that unionized employees are free to use section 216 as a bargaining chip, and indeed must do so if their FLSA claims are to be judicially resolvable. *See* 5 U.S.C. § 7121(a)(1), (2). That is, while "the collective-bargaining mechanisms created by Title VII [5 U.S.C. § 7101 *et seq.*] do not deprive employees of recourse to any of the remedies otherwise provided by statute or regulation," *Karahalios v. National Federation of Federal Employees, Local 1263,* 489 U.S. ——, ——, 109 S.Ct. 1282, 1288, 103 L.Ed.2d 539 (1989), the agreement they negotiate with the government may. *See Harris v. United States,* 841 F.2d 1097, 1099 (Fed.Cir.1988) (where collectively bargained procedures preclude access to the Claims Court, "the issue is not whether anyone's judicial review is foreclosed, but only whether a claimant must pursue one route or another"). In the deal struck between the union and the Internal Revenue Service in our case, overtime grievances were committed to the exclusive province of the negotiated procedures.

Properly put, the question here is not whether the CSRA effected a repeal of section 216; it is whether an additional exception to section 7121(a)(1) of the CSRA, allowing dual review of overtime claims by the courts and through the negotiated procedures, should be implied. The answer is no.

The CSRA "comprehensively overhauled the civil service system." *Lindahl v. OPM,* 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985). In view of the CSRA's "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," *Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2416, 76 L.Ed.2d 648 (1983), the Supreme Court has declined to grant federal employees access to the courts beyond that provided in the CSRA itself. Thus in *Bush,* the Court held there was no cause of action for damages under the First Amendment because it is "inappropriate" to "supplement" the "comprehensive procedural and substantive provisions" of the CSRA. *Id.* at 368, 103 S.Ct. at 2406. Likewise in *United States v. Fausto,* 484 U.S. 439, ——, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988), the Court held that the CSRA's "integrated scheme of administrative and judicial review" barred review by the Claims Court of personnel decisions giving rise to claims for back pay. Significantly, the Court thereby foreclosed an avenue to the courts that, pre-CSRA,

had been open to federal employees. *Id.* at ——, 108 S.Ct. at 676.

Most recently in *Karahalios*, the Court held that, because the CSRA vests the Federal Labor Relations Authority with exclusive authority to enforce a union's statutory duty of fair representation, "a parallel remedy in federal district court" cannot be implied. 489 U.S. at ——, 109 S.Ct. at 1286. Importantly, the Court said that Title VII of the CSRA "provides recourse to the courts in only three instances," and that "[t]o hold that the district courts must entertain such cases in the first instance would seriously undermine what we deem to be the congressional scheme...." *Id.* at ——, ——, 109 S.Ct. at 1286, 1288.

This goes far in disposing of Carter's claim. In the judicial access provisions of the CSRA, only the Federal Labor Relations Authority can go to the district court, and then only to petition for "appropriate temporary relief" from an alleged unfair labor practice. *See* 5 U.S.C. § 7123(d). Even where Congress expressly made exceptions to the exclusive bargained procedures, it only gave access to appellate judicial review; it did not, in contrast to Carter's proposal, allow de novo trials in the district courts.* *See id.* § 7121(d), (e)(1), (f). Moreover, parallel judicial remedies are nowhere provided. At best, an aggrieved employee may choose statutory procedures or the negotiated procedure, "but not both." *See id.* § 7121(d), (e)(1). The point is clear: Congress narrowly circumscribed the role of the judiciary in its carefully crafted civil service scheme.

Until today, we followed "the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress." *Volk v. Hobson*, 866 F.2d 1398, 1403 (Fed.Cir.1989). In view of the exclusivity of collectively bargained procedures, we held that Volk, an elementary school teacher employed by the government, could not seek judicial review of her discharge. In addition, we said that courts "should abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme."

*Id.* at 1402. We therefore concluded that Volk could not sue her superiors in district court for alleged due process violations.

Similarly, in *Carr v. United States*, 864 F.2d 144 (Fed.Cir.1989), we heeded the Supreme Court's counsel in *Fausto*, and held that post-CSRA the Claims Court did not have jurisdiction to review Carr's removal from federal service. And in *Harris*, although reserving the particular question presented here, we held "the agreed procedure, arbitration, preclusive of other procedures [for resolving differential pay grievances,] and consequently, that resort to the Tucker Act is precluded." 841 F.2d at 1100. Other circuits are in accord. *See Montplaisir v. Leighton*, 875 F.2d 1, 3 (1st Cir.1989), *and cases cited* ("The circuits have been equally as forthcoming; in a variety of settings, they have followed the Court's lead and treated CSRA as establishing the sole mechanism for resolving labor conflicts in the federal arena").

Carter's reliance on *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), all dealing with private sector labor disputes, is misplaced. *Karahalios* expressly held that private sector law is not controlling in the context of federal labor controversies. Observing that "federal employment does not rest on contract in the private sector sense," 489 U.S. at ——, 109 S.Ct. at 1288, the Court declined to imply a judicial cause of action for federal employees, even though in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), it had done so for those in the private sector.

Distinctive features of the CSRA underlie the Court's rationale in *Karahalios*, and avoid the cases relied upon by Carter. While Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "permits judicial enforcement of private collective-bargaining contracts," a comparable provision "for suing an agency in federal

---

* Recourse to district court may be available after an adverse decision by the Equal Employment Opportunity Commission. *See* 5 U.S.C. § 7121(d); 42 U.S.C. § 2000e–16(c).

court" is not found in the CSRA. 489 U.S. at —, —, 109 S.Ct. at 1287, 1288. Moreover, the CSRA is unique in prescribing "exclusive" procedures for the resolution of grievances. Indeed, in recognizing a judicial remedy in *Alexander,* the Court pointedly relied on legislative history showing that "the Senate defeated an amendment which would have made Title VII [of the Civil Rights Act of 1964] the exclusive federal remedy for most unlawful employment practices." 415 U.S. at 48 n. 9, 94 S.Ct. at 1019 n. 9.

In holding that bargained procedures are not preclusive of statutory remedies in the private sector, the Court also has emphasized that rights accorded in private labor-management agreements are separate and distinct from those secured by federal statutes. *See Alexander,* 415 U.S. at 50, 94 S.Ct. at 1020 ("contractual and statutory rights" are of a "distinctly separate nature"); *Barrentine,* 450 U.S. at 745, 101 S.Ct. at 1447 ("the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process"). Under the CSRA, however, the rights of a unionized federal employee are consolidated within the four corners of the collective agreement: Congress defined a "grievance" to include contractual disputes and "any claimed violation ... of any law." 5 U.S.C. § 7103(9)(C).

Carter's further argument that a judicial cause of action must obtain because the negotiated procedures provide an inferior remedy is also unpersuasive. He says the negotiated procedures are deficient because an arbitrator may be incapable of resolving the legal issues presented in an overtime grievance, and because the procedures are union-controlled and do not authorize the award of attorney's fees, liquidated damages, or costs.

In support of his first point, Carter again relies on private sector precedent. *See Barrentine,* 450 U.S. at 743, 101 S.Ct. at 1446. In the federal sector, however, it is manifest that Congress intended arbitrators to develop the expertise requisite to the construction and application of federal labor laws. Again, the CSRA expressly defines grievances to include violations of law. 5 U.S.C. § 7103(9)(C). Moreover, arbitral awards are accorded substantial finality and judicial review is, with but one exception, foreclosed. *See id.* §§ 7122, 7123.

As to the second point, a similar argument was rejected by *Bush.* Even assuming "that, as petitioner asserts, civil service remedies were not as effective as an individual damages remedy and did not fully compensate him for the harm he suffered," 462 U.S. at 372, 103 S.Ct. at 2408, it is not our office to supplement the CSRA. *Bush* teaches that because " '[t]he relations between the United States and its employees have presented a myriad of problems with which the Congress over the years has dealt[, and because g]overnment employment gives rise to policy questions of great import, both to the employees and to the Executive and Legislative Branches,' " 462 U.S. at 379, 103 S.Ct. at 2412 (quoting *United States v. Gilman,* 347 U.S. 507, 509, 74 S.Ct. 695, 696, 98 L.Ed. 898 (1954)), it is for the legislature to define the respective rights and obligations of the government and its employees.

To be sure, Congress has extended the rights and remedies of the FLSA to federal employees. Post–CSRA, however, collective bargaining employees must negotiate with their employing agency whether the statutory remedy will be preserved or FLSA claims will be among those commended to the bargained procedures. Here, by his membership in the union, Carter effectively chose the procedures negotiated by his union representative. He should not now be heard to assail their sufficiency, and we should decline his invitation to meddle with the civil service system. *See Patterson v. McLean Credit Union,* 491 U.S. —, —, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989) ("We should be reluctant, however, to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute. *See United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)").